UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CANDIES SHIPBUILDERS, LLC | * | CIVIL ACTION NO.: 2:15-cv-1798 |
| | * | |
| VS. | * | JUDGE: |
| | * | |
| WESTPORT INSURANCE | * | MAG. JUDGE: |
| CORPORATION | * | |
| | * | **JURY DEMAND** |
| | * | |

## ORIGINAL COMPLAINT

**NOW COMES** plaintiff, Candies Shipbuilders, LLC ("Candies"), by and through its undersigned counsel, and hereby files this Original Complaint and Request for Trial by Jury, and alleges as follows:

### THE PARTIES

1.     Plaintiff, Candies, is a limited liability company formed and existing under the laws of the State of Louisiana with its principal place of business in Houma, Louisiana.

2.     Upon information and belief, defendant, Westport Insurance Corporation ("Westport"), is a foreign corporation organized and existing under the laws of Missouri with its principal place of business in Overland Park, Kansas.

### JURISDICTION AND VENUE

3.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity of citizenship exists between Candies and Westport, and the amount in dispute exceeds the sum of $75,000, exclusive of interest and costs.

4.     This Court has personal jurisdiction over Westport because it does and was doing business in Louisiana.

{B0972552.1}

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## FACTUAL BACKGROUND

6.      On or about July 1, 2013, Westport issued an Excess Medical Indemnity Policy, policy number 0657220 (the "Policy"), to Candies.

7.      Candies is the only insured named under the Policy.

8.      The Policy provided coverage to Candies beginning on July 1, 2013, and until June 30, 2014 (the "Policy Period").

9.      The Policy provided coverage for sums expended by Candies for medical treatment of its employees and dependents eligible under, or otherwise entitled to benefits under, the Candies Shipbuilders, LLC Employee Benefit Plan ("Covered Person(s)").

10.      The Policy, however, does not provide coverage for the Plan or Covered Persons, but only provides coverage for sums expended by Candies.

11.      Specifically, under the Policy, Westport "agree[d] to reimburse Losses," and the Policy defines Losses as "the amount Paid for claims by [Candies]."  Policy, at Cover Page; § 1, ¶ 11.

12.      The Candies Shipbuilders, LLC Employee Benefit Plan (the "Plan") was administered by Southern Benefit Service, L.L.C. ("SBS").

13.      SBS was to determine if Candies was to pay a claim under the Plan.  If Candies did, it could then seek reimbursement from Westport under the coverages afforded by the Policy.

14.      The Policy states, in part, that it will be governed by the law of the state of delivery and that it was delivered in Louisiana.

15.     On or about February 28, 2014, a Covered Person was admitted to a neonatal intensive care unit level four ("NICU4") at Ochsner Hospital (the "Patient") because of the serious, life threating conditions the infant exhibited from a premature birth and other ailments.

16.     A NICU4 is the highest level neonatal intensive care unit administered by a hospital.  Upon information and belief, the Patient's admission to such a unit was required because he was born several months premature, and suffered from severe breathing difficulties and other life threating conditions.  Despite receiving the highest level of care for an extended period of time, the Patient later died.

17.     The Patient remained at Ochsner Hospital ("Ochsner") past the end of the Policy Period, which ended on June 30, 2014.

18.     Ochsner submitted its claim for reimbursement to SBS for services and treatment it provided to the Patient.

19.     SBS approved Ochsner's request for reimbursement at the agreed upon amount, including certain discounts.  Thereafter, Candies reimbursed Ochsner.

20.     In turn, Candies sought reimbursement from Westport pursuant to the coverages afforded by the Policy.

21.     On or about September 17, 2014, Candies sought reimbursement from Westport for $954,694.45, minus certain discounts, for sums it paid to Ochsner and provided Westport with an itemized bill for the Patient's charges during the Policy Period.

22.     One day later, on September 18, 2014, Westport reported that it would be denying $234,905.00, exclusive of certain discounts, of Candies' claim for reimbursement.

23.     Upon information and belief, Westport did not request additional loss documentation from Candies, SBS, or Ochsner and did not request other "Proof of Loss," as that

term is defined under the Policy, before Westport's denial of $234,905.00 of Candies' claim for reimbursement.

24.     Upon information and belief, Westport did not perform a bill audit prior to denying the claim for reimbursement or anytime thereafter, despite the fact that the Policy provided that Westport could conduct a bill audit prior to payment by SBS under the Plan or prior to reimbursement under the Policy.

25.     On or about October 29, 2014, Westport stated that it was denying $234,905.00, exclusive of certain discounts, if any, of Candies' claim for reimbursement.

26.     Upon information and belief, the reason stated by Westport for the denial was because of "possible billing errors" and that the claim submitted by Candies included "unbundled and duplicative charges."  According to Ms. Johansen, Westport, therefore, "denied reimbursement under the terms of the stop loss policy" or the Policy.

27.     Upon information and belief, Westport's sole reason for denying Candies' claim for reimbursement was a computerized review of the itemized bill from Ochsner performed by National Bill Audit Services ("NBAS").

28.     Westport has no authority under the Policy to deny claims based on such a computerized bill review.

29.     The NBAS "bill review" purportedly denied reimbursement for: (a) $230.00 for "error in billing;" (b) $1,919.00 for "[d]uplicative service/charge;" (c) $221,407.00 for "[u]nbundled (item/service customarily included in room and board charge);" (d) $16.00 for "[u]nbundled (item/service customarily included in laboratory charge);" (e) $9,108.00 for "[u]nbundled (item/service customarily part of routine nursing care);" and (f) $15.00 "[u]nbundled (item/service customarily included in anesthesia charge)."  The total denial by

Westport for reimbursement is $232,685.00, exclusive of certain discounts, if any.

30.     Westport incorporated NBAS's analysis in its denial of Candies' claim for reimbursement.

31.     All of these items were paid for by Candies and are reimbursable expenses under the coverages of the Policy.

32.     No exclusions in the Policy are applicable to the expenses submitted by Candies for reimbursement under the Policy.

33.     Upon information and belief, when NBAS was conducting its bill review it was acting as an agent for Westport and/or at Westport's direction.

34.     Upon information and belief, despite the large amount at issue, $954,694.45, NBAS did not perform a bill audit and Westport did not request a bill audit.

35.     Rather, NBAS simply reviewed the bill through its software system and did not account for the Patient's serious illnesses, the level of care the Patient needed, or other factors.

36.     Upon information and belief, Ochsner was troubled by the fact that Westport denied reimbursement without reviewing medical records for the Patient, and invited Westport to conduct an audit of the Patient's bill pursuant to Louisiana law.

37.     Also, on November 3, 2014, Ms. Johansen for Westport indicated that the "existing information" she had supported Westport's denial, specifically stating that Westport did "not believe" the charges identified by NBAS as unbundled were reimbursable.

38.     Ms. Johansen also questioned whether the Patient needed confinement to a NICU4 for the entire time, purportedly relying on a Peer Review Report submitted by NBAS, but would not at this time seek a claim for overpayment from Candies.

39.     Upon information and belief, Ms. Johansen's statement and NBAS's Peer Review Report were made without reviewing a single medical record for the Patient.

40.     Ms. Johansen's statement is implicitly nothing more than a vailed threat that should Candies decide to pursue its rights under the Policy, Westport would pursue a claim against Candies for overpayment.

41.     Upon information and belief, prior to the denial, Westport did not inquire into Ochsner's billing practices, the charges customarily made for similar services in the same geographical area where Ochsner is located, or any other specific information related to the Patient, the services rendered, or other information possibly pertinent to Candies' claim for reimbursement, as outlined in the Policy when analyzing a claim for reimbursement.

42.     On February 16, 2015, Candies wrote to Westport outlining numerous reasons why the denial for reimbursement was improper pursuant to the terms and coverages afforded by the Policy and, again, requesting reimbursement.

43.     Despite its original denial, on March 24, 2015, Westport responded to Candies' February 16, 2015 letter and, for the first time, requested Candies to provide "documentation from [Ochsner] in regards to the elements of its daily room charges" and stated that this information "would go a long way in clearing up the dispute."

44.     If Westport considered such documentation necessary to support its denial or to determine if Candies was entitled to reimbursement under the Policy, it should have requested this documentation before it issued its original denial.

45.     Westport's denial was arbitrary and capricious.

46.     Also on March 24, 2015, Westport acknowledged that "[d]ocumentation from the facility to reflect that its charges are in line or different from industry standard would be

beneficial," but otherwise Westport is forced to rely on NBAS to understand billing practices.

47.     Neither NBAS's billing practices, nor NBAS's understanding of billing practices, form part of the Policy, and claims for reimbursement under the Policy are not subject to NBAS's approval.

48.     On April 9, 2015, Westport responded again denying Candies' claim for reimbursement.

49.     While Westport acknowledged that NBAS noted that the majority of the denial of Candies' claim for reimbursement was based on "unbundled" services, or the judgment that the items were "customarily included in" other services, Westport asserted on April 9, 2015, that its sole basis for the denial was based on a billing error exclusion in the Policy.

50.     This later position is contrary to the position taken by Westport in its original denial dated November 3, 2014.

51.     This later position is contrary to the bill review performed by NBAS upon which Westport relied in denying Candies' claim for reimbursement.

52.     Westport has waived its right and estopped from now auditing the bill submitted by Candies for reimbursement if it has not already conducted an audit.

53.     Westport has improperly deducted from the amount it agreed to reimburse the amounts it determined to exceed the usual, reasonable, and customary charges and the negotiated rate.

## CLAIMS

54.     An insurer owes its insured a duty of good faith and fair dealing.

55.     An insurer has affirmative duties to its insureds, including to adjust claims fairly and promptly, to pay claims timely, to timely and reasonably settle claims, and to accurately

represent pertinent facts and insurance policy provisions relating to the insurance coverage at issue.

56.     Despite repeated requests by Candies, Westport is arbitrarily, capriciously and/or without cause denying insurance coverage to Candies for a covered occurrence under the Policy.

57.     Westport is in breach of its contractual and statutory duties, including its duties of good faith and fair dealing.

58.     As a result of Westport's breach of its contractual and statutory obligations, in addition to reimbursement of the denied claim owed any general or special damages to which Candies is entitled, Candies is entitled to the assessment of statutory penalties against Westport equal to two times the damages sustained or five thousand dollars, whichever is greater.  La. R.S. 22:1973.C.

59.     Louisiana law also provides that all insurers shall pay the amount of any claim due any insured within thirty days of receipt of written notice and proof of claim.  La. R.S. 22:1821.A; La. R.S. 22:1892.

60.     Westport's failure to properly and timely pay Candies' claim for reimbursement subjects Westport to a penalty payable to Candies of double the amount of the health benefits due under the Policy, together with attorney's fees.  La. R.S. 22:1821.A.

61.     Alternatively, Westport's failure to properly and timely pay Candies' claim for reimbursement subjects Westport to a penalty to Candies of fifty percent of the amount owed and the amount found to be due, as well as reasonable attorney's fees.  La. R.S. 22:1982.B.

62.     Candies hereby makes its claim against Westport for all litigation costs, attorney's fees, and statutory penalties, as well as full insurance coverage under the Policy and general and special damages in connection with the sums paid by Candies.

Plaintiff requests a trial by Jury.

**WHEREFORE,** after due proceedings are held, Candies Shipbuilders, LLC, prays that judgment be granted herein against Westport Insurance Corporation affording to Candies all amounts due under the Policy, all damages, statutory penalties, attorney's fees and other relief available to Candies under Louisiana law, including but not limited to relief provided by La. R.S. 22:1821, 1892, and 1973, as a result of Westport's breach of its good faith and other obligations and its arbitrary and capricious failure to provide coverage, without cause, for Candies' claims, as well as all other relief appropriate in law or equity.

Respectfully Submitted:

BALDWIN HASPEL BURKE & MAYER, LLC

_s/   Larry E. Mobley_
THOMAS J. CORTAZZO, T.A. (#18174)
tcortazzo@bhbmlaw.com
LARRY E. MOBLEY (#29990)
lmobley@bhbmlaw.com
1100 Poydras St., Ste. 3600
New Orleans, LA 70163
Telephone:  504-569-2900
Fax:  504-569-2099

*Counsel for Plaintiff, Candies Shipbuilders, LLC*