UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CANDIES SHIPBUILDERS, LLC | CIVIL ACTION |
| VERSUS | NO. 15-1798 |
| WESTPORT INS. CORP. | MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## ORDER AND REASONS ON MOTION

This case presents the question whether the Employee Retirement Income Security Act of 1974 ("ERISA") preempts claims for damages, penalties and attorneys fees under Louisiana state law brought by an insured, plaintiff, Candies Shipbuilders, LLC, against its insurer, defendant Westport Insurance Corporation. Candies seeks reimbursement under a stop-loss policy of amounts that Candies paid to cover the medical expenses of a beneficiary under its self-insured employee benefit plan. Defendant filed a Motion for Summary Judgment and to Strike Jury Trial Demand. Record Doc. No. 38. Westport seeks summary judgment on grounds that (1) Candies has no cause of action against defendant for damages, penalties and attorney's fees under La. Rev. Stat. §§ 22:1892 and 22:1973; (2) plaintiff's claims for damages, penalties and attorney's fees under La. Rev. Stat. § 22:1821 are preempted by ERISA; and (3) since plaintiff's claims fall exclusively under ERISA, Candies has no right to a jury trial.

Candies filed a timely opposition memorandum. Record Doc. No. 52. Westport received leave to file a reply memorandum. Record Doc. Nos. 53, 57, 58. Candies received leave to file a surreply memorandum. Record Doc. Nos. 55, 59, 60.

Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that defendant's motion is GRANTED IN PART AND DENIED IN PART as follows.

I.  UNDISPUTED MATERIAL FACTS

The following material facts are accepted as undisputed, solely for purposes of the pending motion. Westport issued a stop-loss Excess Medical Benefits Policy (the "Policy"), to the named insured, Candies. In the Policy, Westport agreed to reimburse Candies for medical benefit claims paid by Candies under its Employee Benefit Plan (the "Plan") during the policy period. Policy, Record Doc. No. 38-6, Defendant's Exh. 2 to Defendant's Exh. A, declaration of Julie Johansen.

The Plan is a self-funded group health plan administered by Southern Benefit Services, LLC ("Southern"). The Plan is administered under the provisions of ERISA.

The Policy states:

> We [Westport] are the Insurer under this Policy and you [Candies] are the Insured. Employees and their dependents are not parties to this Policy. We do not insure or pay Benefits to your Employees or their dependents under the Plan. We are limited under the Policy to reimbursing you [Candies] for Losses under this Policy that are Incurred and Paid by you [Candies] as self-insurer of the Plan.

<u>Id.</u> at p. 19, § 9, ¶ 7. The Policy was delivered in Louisiana and is governed by the laws of the state of delivery. <u>Id.</u> at p. 1.

The Policy has a "retention limit" of $50,000 for each person covered by the Plan. Thus, the Policy provided reimbursement coverage to Candies for medical expenses it paid in excess of $50,000 for medical treatment of its employees and their dependents who are beneficiaries of the Plan. The Policy only insures Candies, and does not provide coverage for the Plan, Southern, Candies' employees or their dependents.

A prematurely born baby who was covered under the Plan was hospitalized for several months after birth and incurred huge medical bills. Candies paid the hospital for its charges, then sought reimbursement from Westport pursuant to the Policy for the amounts that plaintiff had paid in excess of $50,000.

Westport denied a portion of Candies's claim for reimbursement. Candies alleges in this lawsuit that Westport breached its obligations under the Policy and its statutory duties as an insurer under Louisiana law. Plaintiff's complaint seeks contractual damages from Westport under the Policy for the unpaid portion of plaintiff's claim and extra-contractual statutory damages, penalties and attorney's fees under three Louisiana statutes: La. Rev. Stat. §§ 22:1892, 22:1973 and 22:1821.

## II. ANALYSIS

### A. Summary Judgment Standards

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

B.   Plaintiff's Claims Under La. Rev. Stat. §§ 22:1892 and 22:1973

Plaintiff's complaint cites three statutes in Louisiana's Insurance Code, La. Rev. Stat. §§ 22:1892, 22:1973 and 22:1821, in support of its demands for penalties and

attorney's fees based on defendant's alleged failure to pay or settle plaintiff's claim under the stop-loss Policy timely or in good faith. Westport argues that neither Section 1892 nor 1973 provides a cause of action. Candies does not respond to this argument in its opposition memorandum. I find that defendant's legal argument is well-founded.

Stop-loss or excess insurance is "insurance covering the loss of an insured above a specific amount or a self-insurer for losses over a stated amount." La. Rev. Stat. § 22:883(A).

> C. A stop-loss or excess insurance policy form intended for issue to cover losses of a group health plan, . . . shall satisfy the following conditions:
> (1) The stop-loss or excess insurance policy shall be <u>issued to and insure the group health plan or the plan itself and not the employees, members, or participants</u>.
> (2) <u>Payments by the insurer shall be made to the sponsor of the group health plan or the plan itself</u> and not the employees, members, participants, or providers.
> . . . .
> D. Stop-loss insurance shall not be equivalent to reinsurance . . . . An entity purporting to cover a self-insured group health plan shall be treated as a stop-loss carrier or excess insurer and shall be subject to the insurance laws and regulations of the state relating to insurers and to penalties for violations of such laws and regulations.

Id. § 22:883(C), (D) (emphasis added).

For purposes of plaintiff's claims under La. Rev. Stat. §§ 22:1892, 22:1973 and 22:1821, the stop-loss Policy at issue is a "health and accident" policy. The Louisiana Insurance Code defines "health and accident" insurance to include: "Health stop loss. Insurance against major expenses incurred by an employee benefit plan due to the illness or injury of a covered employee . . . ." Id. § 22:47(2)(b)(2).

As a matter of law, a health and accident policy is <u>not</u> subject either to Section 1892, which applies only to insurers who issue "policies <u>other than</u> life and health and accident" policies, <u>id.</u> § 22:1892 (emphasis added), or to Section 1973, which "<u>shall not</u> be applicable to claims made under health and accident insurance policies." <u>Id.</u> § 22:1973(D) (emphasis added). Accordingly, defendant's motion for summary judgment is granted in part in that plaintiff's claims under La. Rev. Stat. §§ 22:1892 and 22:1973 are dismissed with prejudice.

    C.    <u>ERISA's Civil Enforcement and Preemption Scheme</u>

> The purpose of ERISA is to provide uniform regulatory requirements for employee benefit plans, including remedies, sanctions, and access to the federal courts, to protect the interests of participants and their beneficiaries. One of ERISA's primary means of achieving this purpose is its preemptive scope, which is "intended to ensure that employee benefit plan regulation would be exclusively a federal concern."

<u>Aetna Life Ins. Co. v. Methodist Hosps.</u>, 95 F. Supp. 3d 950, 958 (N.D. Tex. 2015), <u>appeal filed</u>, No. 15-10210 (5th Cir. Mar. 17, 2015) (quoting <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004)) (internal quotation omitted).

As part of its preemptive scope and with relevance to the instant motion, ERISA provides that a civil enforcement action may be brought under its Section 502(a) (codified as 29 U.S.C. § 1132(a)):

> (1) by a <u>participant or beneficiary</u>–
>> . . .
>> (B) to <u>recover benefits due</u> to him under the terms of his plan, to <u>enforce his rights under the terms of the plan</u>, or to clarify his rights to future benefits under the terms of the plan;

> . . . .
> (3) by a participant, beneficiary, or <u>fiduciary (A) to enjoin any act</u> or practice which violates any provision of this subchapter or the terms of the plan, or (B) <u>to obtain other appropriate equitable relief</u> (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . . .

29 U.S.C. § 1132(a) (emphasis added).

"There are two distinct types of preemption under ERISA: complete preemption under § 502(a) (the civil enforcement provision codified at 29 U.S.C. § 1132(a)) and conflict or express preemption under § 514 (codified at 29 U.S.C. § 1144(a))." <u>Wright v. La. Corrugated Prods., LLC</u>, 59 F. Supp. 3d 767, 774 (W.D. La. 2014) (citing <u>Ellis v. Liberty Life Assur. Co.</u>, 394 F.3d 262, 275 n.34 (5th Cir. 2004)).

> Complete preemption occurs when a federal statute wholly displaces a state law cause of action, and in effect, converts or recasts the state law claim into a federal cause of action. ERISA's civil enforcement provision is a statute with such preclusive force for any cause of action that falls within its scope. A cause of action falls within the scope of ERISA's civil enforcement provision when the plaintiff <u>could</u> have brought his claim under ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)], <u>and</u> where there is no other independent legal duty implicated by the defendant's actions.

<u>Id.</u> (footnote and quotation omitted) (citing <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 62-66 (1987); <u>Davila</u>, 542 U.S. at 207-11; <u>Arana v. Ochsner Health Plan</u>, 338 F.3d 433, 440 (5th Cir. 2003)). Although Westport does not mention "complete preemption" in its motion, it appears to argue that plaintiff's claim for state law penalties is completely preempted when defendant asserts that Candies brings this action as a fiduciary, which would bring its claims under 29 U.S.C. § 1132(a)(3).

Conflict preemption occurs under Section 1144, which provides in relevant part:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter <u>relate to</u> any employee benefit plan . . . .
(b) Construction and application
   . . . .
   (2)(A) Except as provided in subparagraph (B) [which is not applicable in the instant case], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which <u>regulates insurance</u>, banking, or securities.

29 U.S.C. § 1144(a), (b)(2)(A) (emphasis added).

To determine whether Section 1144(a)] preempts a state law, a court must first determine whether the state law "relates to any employee benefit plan." 29 U.S.C. § 1144(a). "Second, a court must determine whether the 'savings clause' of the ERISA preemption provision applies, because this clause exempts from preemption any state law that 'regulates insurance.' ERISA § 514(b)(2)(A) [29 U.S.C. § 1144(b)(2)(A)]." <u>Methodist Hosps.</u>, 95 F. Supp. 3d at 958.

As to the first prong of conflict preemption, "a state law 'relates to' a covered employee benefit plan for purposes of § 1144(a) 'if it has a connection or reference to the plan.'" <u>King v. Bluecross Blueshield</u>, 439 F. App'x 386, 389 (5th Cir. 2011) (quoting <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 47 (1987)).

[T]his broadly worded provision is clearly expansive. Simultaneously, however, the Supreme Court recognizes that, given its broadest reading, the phrase "relate to" would encompass virtually all state law. The Supreme Court has also acknowledged that its "connection with" and "reference to" glosses are "scarcely more restrictive" than the text of § 1144(a), and of little help drawing the line in close cases. The Court has, therefore,

- 10 -

> declined to apply an "uncritical literalism" to the phrase, and observed that "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."
> . . . .
> . . . . [Therefore, a] defendant pleading preemption under 29 U.S.C. § 1144(a) must prove that: "(1) the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationships among traditional ERISA entities–the employer, the plan and its fiduciaries, and the participants and beneficiaries."

Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co., 662 F.3d 376, 382 (5th Cir. 2011), reh'g en banc granted, 678 F.3d 940 (5th Cir.), opinion reinstated in relevant part, 698 F.3d 229 (5th Cir. 2012) (citations omitted).

"The critical distinction, however, is not whether the parties to a claim are traditional ERISA entities, but whether the claims affect an aspect of a relationship that is comprehensively regulated by ERISA." Id. at 385 (citation omitted). "[C]ourts are less likely to find preemption when the claim merely affects relations between an ERISA entity and an outside party, rather than between two ERISA entities." Hubbard v. Blue Cross & Blue Shield Ass'n, 42 F.3d 942, 947 (5th Cir. 1995).

Because conflict preemption is an affirmative defense, defendant bears the burden of proving that the state law "relates to" the employee benefit plan. Bank of La. v. Aetna U.S. Healthcare Inc., 468 F.3d 237, 242 (5th Cir. 2006); Ellis, 394 F.3d at 275 n.34. If defendant meets that burden, the state law is preempted under Section 1144(a). Plaintiff may nonetheless avoid preemption under the savings clause of Section 1144(b), which

provides that a "law . . . which regulates insurance" is not preempted. Ellis, 394 F.3d at 275 (citing 29 U.S.C. § 1144(b)(2)(A)).

> [F]or a state law to be deemed a "law . . . which regulates insurance" under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. Second, . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured.

Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-42 (2003); accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 198 (5th Cir. 2015); Ellis, 394 F.3d at 276.

### D. Plaintiff's Claim Under La. Rev. Stat. § 22:1821

Plaintiff's claim for statutory penalties based on Westport's failure to reimburse Candies for losses allegedly covered under the Policy arises under La. Rev. Stat. § 22:1821. The statute provides in relevant part:

> All claims arising under the terms of health and accident contracts issued in this state . . . shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. . . . Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney fees to be determined by the court.

La. Rev. Stat. § 22:1821(A).

Westport argues, incorrectly, that Candies brings the instant action as a fiduciary under its self-insured Plan. Defendant contends that a fiduciary's "'[r]elief may take the

form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits,'" Defendant's memorandum, Record Doc. No. 38-2 at p. 5 (quoting Dedeaux, 481 U.S. at 53; Cramer v. Ass'n Life Ins. Co., 569 So. 2d 533, 535 (La. 1990)), but that ERISA's enforcement provision does not allow exemplary damages.  Westport contends that the Louisiana Supreme Court in Cramer, following Dedeaux, ruled that ERISA preempts any action for statutory penalties under La. Rev. Stat. § 22:1821(A).  Defendant's argument fails as to both complete and conflict preemption.

1. Complete preemption

To the extent that Westport is arguing that plaintiff's state law claim is completely preempted by Section 1132(a), defendant fails to address or to satisfy the relevant standard.  "A cause of action falls within the scope of ERISA's civil enforcement [complete preemption] provision when the plaintiff could have brought his claim under ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)], and where there is no other independent legal duty implicated by the defendant's actions."  Wright, 59 F. Supp. 3d at 774 (citations omitted).

First, Westport has presented no evidence that Candies is suing Westport as a fiduciary under the Plan.  As support for its mere allegation, Westport incorrectly describes the relief that plaintiff could obtain if it were bringing a claim in its fiduciary capacity.  ERISA's Section 1132(a)**(3)**, which defendant cites as the apparent basis for

preemption, authorizes fiduciaries to sue <u>only</u> for equitable relief to redress violations or enforce obligations of the Plan. Candies is <u>not</u> asserting a claim for equitable relief under La. Rev. Stat. § 22:1821. Westport is <u>not</u> a party to and has no obligations under the Plan. Candies is <u>not</u> seeking to redress any violations or enforce any obligations of the Plan. Plaintiff could <u>not</u> have brought its claim against Westport under Section 1132(a)(3). ERISA does <u>not</u> authorize a fiduciary to sue for relief in the "form of accrued benefits due," the language upon which Westport relies from <u>Dedeaux</u> and <u>Cramer</u>. That type of relief is available only to plan participants or beneficiaries suing under Section 1132(a)**(1)(B)**, such as the plaintiffs in <u>Metropolitan Life Insurance</u>, <u>Dedeaux</u>, <u>Davila</u>, <u>Arana</u> and <u>Cramer</u>. Candies is suing as an insured for damages under the Policy.

Second, complete preemption does not occur when there is another independent legal duty implicated by defendant's actions. In the instant case, even though the Policy cross-references and incorporates the Plan for purposes of determining whether a covered loss has occurred under the Policy, "mere consultation of an ERISA plan is not enough to bring the claims within the scope of § 502(a)." <u>Lone Star OB/GYN Assocs. v. Aetna Health Inc.</u>, 579 F.3d 525, 530 (5th Cir. 2009). Plaintiff's claims arise out of Westport's independent legal duty contained in the Policy. <u>Id.</u> at 530-31.

Accordingly, defendant's motion based on complete preemption is denied.

## 2. Conflict preemption

Westport primarily argues that conflict preemption precludes plaintiff's claim for penalties under La. Rev. Stat. § 22:1821. Defendant relies on Dedeaux (which involved a Mississippi state law), Cramer and Clancy v. Employers Health Ins. Co., 101 F. Supp. 2d 463, 467 (E.D. La. 2000). Cramer and Clancy held that La. Rev. Stat. § 22:1821[1] was preempted. However, Westport fails to recognize the critical distinction that Dedeaux, Cramer and Clancy were civil actions brought <u>by plan participants or beneficiaries</u> against the plan <u>administrator</u> to obtain <u>benefits</u> and to seek penalties under state law for the defendants' alleged failures to provide benefits due under the plan. In those circumstances, the three courts held that the state law causes of action were preempted by Section 1144(a) because they "relate to" an employee benefits plan. These cases are not on point and do not control the instant matter.

Westport fails to carry its burden under Section 1144(a) to show that "(1) the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationships among traditional ERISA entities–the employer, the plan and its fiduciaries, and the participants and beneficiaries." Access Mediquip, 662 F.3d at 382 (citation omitted). None of these criteria is implicated in the instant case.

---

[1] Both Cramer and Clancy concerned former La. Rev. Stat. § 22:657, which was redesignated as La. Rev. Stat. § 22:1821 in 2009 without changing the substance of the provision. Wright, 59 F. Supp. 3d at 776 & n.9 (citing La. Acts 2008, No. 415, § 1).

In <u>Bank of Louisiana v. Aetna</u>, the Fifth Circuit addressed claims made by the insured against the insurer under a stop-loss insurance policy that was issued for a self-insured employee benefit plan. The plaintiff Bank had entered into two contracts with Aetna. First, Aetna agreed to administer the Bank's plan. Second, the Bank purchased from Aetna a stop-loss policy that provided coverage for amounts in excess of $50,000 on benefits claims that the Bank paid under its self-insured plan, up to an aggregate of $600,000. When the aggregate amount was reached before the end of the policy term, the parties agreed to extend the policy for three months. A dispute arose, in part, over amounts that the Bank had paid under the benefits plan, which the Bank claimed were reimbursable under the extended stop-loss policy, but which Aetna refused to pay. <u>Bank of La.</u>, 468 F.3d at 239-40. The Bank sued for breach of contract, detrimental reliance and misrepresentation under Louisiana law. The district court granted Aetna's summary judgment motion, holding that ERISA preempted all of the Bank's claims.

The Fifth Circuit reversed in part. The court distinguished between plaintiff's claims against Aetna in its capacity as the plan administrator deciding whether and when to pay claims for benefits, which were preempted by ERISA, and claims brought against Aetna under the stop-loss policy for reimbursement of claims already paid, which were not preempted because they did not meet either prong of the Section 1144(a) "relates to" test.

As to the first prong, the Fifth Circuit held:

> To the extent that the Bank intends to prove its breach of contract claim through evidence that Aetna [as administrator] <u>improperly delayed processing and paying benefit claims</u>, Aetna is correct that it would require inquiry into an area of exclusive federal concern. See <u>Hollis v. Provident Life and Accident Ins. Co.</u>, 259 F.3d 410, 414 (5th Cir. 2001) (right to receive benefits under an ERISA plan is an area of exclusive federal concern); <u>Hubbard v. Blue Cross & Blue Shield Ass'n</u>, 42 F.3d 942, 946 (5th Cir. 1995) (claim that would require inquiry into how benefit claims were processed implicates area of federal concern).
>
> The Bank has asserted, however, several other claims that do not require inquiry into Aetna's processing of benefit claims or administration of the Plan. For example, to the extent the Bank's breach of contract claim is premised on Aetna's failure [as an insurer] to <u>reimburse it for amounts actually paid</u> during the three-month extension period, the claim does not depend on proof that Aetna improperly delayed in paying and processing benefit claims. . . . <u>These claims do not challenge any act or omission by Aetna in processing benefit claims or administering the Plan; rather, they call into question Aetna's representations about the scope of the stop-loss extension</u>.

<u>Id.</u> (emphasis added).

As to the second prong, Aetna argued that the parties were "two traditional ERISA entities–an employer and a plan administrator. The Bank contends, however, that Aetna was acting in its capacity as a vendor of insurance, not as a fiduciary of the Plan." <u>Id.</u> at 243. The Fifth Circuit agreed with the Bank, holding that

> Aetna was not acting in a fiduciary capacity when it negotiated the stop-loss extension, represented to the Bank which claims would be covered by the stop-loss extension, and performed its duties under the stop-loss extension. Aetna identifies no cases holding that a stop-loss insurer is necessarily a plan fiduciary.FN12 The <u>benefits of stop-loss insurance inure solely to the Bank</u>, and Aetna cites no evidence that the stop-loss policy is a plan asset or was purchased with plan assets.

- 17 -

> FN12 The majority of cases are to the contrary. For example, the Ninth Circuit held in Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355 (9th Cir. 1997), that a plan's relationship to its stop-loss insurer is like that between any commercial entities and is not regulated by ERISA. See also Seneca Beverage Corp. v. HealthNow N.Y., Inc., 383 F. Supp. 2d 413, 423 (W.D.N.Y. 2005) (stop-loss insurer is not a fiduciary); Northern Kare Facilities/Kingdom Kare, LLC v. Benefirst LLC, 344 F. Supp. 2d 283, 287 (D. Mass. 2004) (same); Deeter v. Greene, Tweed and Co., Inc., CIV. A. 98-1222, 1998 WL 639190 (E.D. Pa. Sept. 18, 1998) (same); Union Health Care, Inc. v. John Alden Life Ins. Co., 908 F. Supp. 429, 432-36 (S.D. Miss. 1995) (same). The reasoning of these courts is persuasive and consistent with our own.

Id. at 244 (emphasis added); see also Diversatek, Inc. v. QBE Ins. Corp., No. 07-C-1036, 2010 WL 4941733, at *3 (E.D. Wis. Nov. 30, 2010) (citation omitted) ("Although an ERISA governed plan provides the background for this case, ERISA preemption does not apply because this case is a simple breach of contract dispute between an insured (Diversatek) and an excess loss insurer (QBE) over whether coverage exists under an excess loss policy for claims paid by Diversatek" under its self-insured employee benefits plan.); Feigenbaum v. Summit Health Adm'rs, Inc., No. 01-CV-805, 2008 WL 2386168, at *6 (D.N.J. June 9, 2008) (citing Bank of La., 468 F.3d at 241-44; Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich., 139 F.3d 546, 549 (6th Cir. 1998); Geweke Ford, 130 F.3d at 1358-60) ("Many courts have held that ERISA does not preempt state regulation of the commercial contractual relationship between a plan and its non-fiduciary insurers for insurance purchased by the plan. Here if Defendants [the stop-loss insurer and insurance broker] were not fiduciaries but were rather mere

insurance brokers, engaged in a simple commercial relationship with the Plan, then ERISA would not preempt Plaintiffs' state law claims for Defendants' alleged failure to abide by that relationship.").

The Fifth Circuit concluded in Bank of Louisiana that

[t]he only claim to implicate Aetna's fiduciary relationship with the Bank is the Bank's claim that Aetna breached the stop-loss extension by failing to reimburse the Bank for claims that Aetna delayed processing and paying and, hence, that were not paid during the extension period. Accordingly, Aetna has established the second element of its preemption defense only as to this latter claim.FN13

> FN13 . . . . [T]he Bank's breach of contract claim, to the extent it is premised on Aetna's alleged delaying the processing of claims, is preempted. The wrong for which the Bank seeks to recover in its remaining claims, however, is Aetna's conduct in negotiating and performing under the stop-loss extension. Such claims do not concern the processing of claims for benefits and are not preempted.

Bank of La., 468 F.3d at 244 (emphasis added).

Bank of Louisiana dictates a finding that Candies' claims against Westport are not preempted by ERISA. Candies sues in its capacity as the insured under the Policy, not as a fiduciary under the Plan. As to these claims, Westport is not a traditional ERISA entity. Its relationship with Candies is as a vendor of insurance. Plaintiff's claims for reimbursement of benefits that it already paid do not require inquiry into an area of exclusive federal concern. Westport has not carried its burden to show that plaintiff's state law claims under La. Rev. Stat. §22:1821 "relate to" an employee benefit plan as

required by Section 1144(a) for conflict preemption. The claims are not preempted and the court need not consider the savings clause in Section 1144(b).

Accordingly, defendant's motion is denied as to plaintiff's claims under La. Rev. Stat. §22:1821. Because ERISA does not preempt plaintiff's state law claims, Candies retains its right to trial by jury, and its jury demand will not be stricken.

### CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment and Motion to Strike Jury Trial Demand, Record Doc. No. 38, is granted in part as to plaintiff's claims under La. Rev. Stat. §§ 22:1892 and 22:1973, which are DISMISSED WITH PREJUDICE. The motion is denied in all other respects.

New Orleans, Louisiana, this ___16th___ day of February, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE